**GINDER and SMITH, Co-Executors, Plaintiffs, v. GINDER et, Defendants.**

Probate Court, Franklin County.

No. 155674.   Decided December 28, 1954.

Forrest R. Detrick, Frank A. Koenig, Columbus, for executors.
Kennedy & Kennedy, Columbus, for Union Cemetery Association.
Guy G. Cline, Circleville, for Floyd Woolever.
McClelland & DeVennish, Columbus, for Violet Roush and Edwin Roush.

## OPINION

By McCLELLAND, J.

This matter comes before this court on an application filed by Bernice Ginder and Irvin G. Smith, co-executors of the Last Will and

Testament of Floyd E. Ginder, deceased, against Bernice Ginder, et al.

Upon examination of the file, the court finds that all of the parties are before the court, either by summons or by entry of appearance. The only defendant who has filed an answer herein is Union Cemetery Association. The plaintiffs ask the court's declaration as to certain matters set forth in the application.

We must now look to the contents of the will. By item second, the testator asks that his remains be interred in Forest Rose Cemetery at Lancaster, Ohio, and also directs that his executors shall buy and have erected a suitable monument upon his grave.

By item third of the will, he directs that the sum of $300.00 be paid to the Trustees of the above named cemetery, to be held in trust and the income to be used to keep up his lot.

By item fourth of the will, he bequeaths the sum of $500.00 to the Trustees of Darbyville Methodist Church, the same to be held in trust and the income to be used in providing Christmas cheer and gifts for the children of the community. He further provides that if the church should be disbanded, then the same shall be given to White Cross Hospital as a memorial to himself and his wife.

By item fifth of the will, he gives to the Trustees of the Lancaster Hospital the sum of $1000.00 in memory of the Ginder Family.

By item sixth of the will, he devises to three different persons the old family homestead in Lancaster, Ohio.

Item seventh of the will consists of the following language:

"I give, devise and bequeath to my wife, Bernice Ginder absolutely all of the remainder of the personal property of which I may die seized and a life estate in all of the remainder of the real estate of which I may die seized."

Item eighth of the will consists of the following language:

"Subject to the life estate of my wife, I give, devise and bequeath the property known as 27 and 29 Midland Avenue, Columbus, Ohio, to Violet Roush for and during her natural life and then to the heirs of her body. Should she have no such heirs then the same shall revert to my heirs."

Item ninth of the will reads as follows:

"Subject to the life estate of my wife I give, devise and bequeath the five (5) family apartment in Lancaster, Ohio, and purchased from my father's estate, to Irvin G. Smith, Nada Smith Kerr and Mary Jane Kegley, share and share alike."

Item tenth of the will reads as follows:

"Subject to the life estate of my wife, I give, devise and bequeath all of the property in Fairfield County, Ohio, which I purchased from my father's estate, to Irwin Smith, Nada Smith Kerr and Mary Jane Kegley, share and share alike."

Item eleventh of the will consists of the following language:

"All of the remainder and residue of the real estate of which I may die seized, and in which my wife, Bernice Ginder, shall have a life estate, is hereby divided into four (4) shares, which I give, devise and bequeath as follows: One share to Violet Roush and Edwin Roush; one share to William Carpenter, Jack Carpenter and Edwin Roush; one share to Harold Farmer, Sr. and Floyd Woolever, if they are still tenants on

my farm; and one share to Irwin Smith, Nada Smith Kerr and Mary Jane Kegley."

We will not take up the questions propounded by the application in the order in which they are propounded, but in discussing this will we will discuss the matters in what we consider a logical order.

We first refer to the sixth item of the will, in which the property at 185 East Sixth Avenue, Lancaster, Ohio, is given to the three persons named therein absolutely and in fee simple. In item seventh he gives his wife, Bernice Ginder, a life estate in all of the remainder of the real estate of which he may die seized. It is to be noted in the subsequent items by which certain real estate is specifically devised, he specifically reserves a life estate in those devises. He did not use such language in the devise contained in the sixth item and it is our opinion when he used the word "remainder" in item seventh, he used that in the sense as if he had used the term "residue" rather than "remainder." If he used the term "remainder" in a technical sense, he would have given a life estate in all of the property and then a life estate in the "remainder," which, of course, creates an incongrous situation. It is therefore our holding that the devise created by item sixth is not subject to the life estate of his wife, but that all of the real estate devised by the testator, other than that which is disposed of in item sixth, is subject to the life estate of his wife, Bernice Ginder.

The next question which we will consider is whether the federal estate tax, the amount of which will be determined by virtue of the federal estate tax law, shall be paid out of the general estate before distribution, or whether it shall be paid out of the general estate before distribution, or whether it shall be charged against the devisees and legatees and not against such portion as may pass to the surviving spouse. When this application was filed on July 8, 1954, it raised a serious question but that question has now been answered by the decision of the Supreme Court of Ohio, in the case of **Campbell v. Lloyd,** reported in **162 Oh St 203,** and which appears in the November 22, 1954, number of the Ohio Bar, the syllabus of which case reads as follows:

"Where a widow elects under §10504-55 GC, to take under the statute of descent and distribution and the applicable portions of that statute (§10503-4 GC) provide that 'personal property shall be distributed' and 'real estate or inheritance shall descend and pass in parcenary' in part to the surviving spouse, the amount of the federal estate tax on the decedent's estate should be deducted therefrom before computing the widow's share thereof. (§§10503-4, 10504-55, 10504-77, 10509-121, 10509-181, 10509-182 and 10510-2 GC, and Section 812 (3), Title 26, U. S. Code, construed and applied. The syllabus in **Tax Commission, ex rel Price, Attorney Genl., v. Lamprecht, Admr., 107 Oh St 535,** approved and followed. Paragraphs two, three and four of the syllabus and the decision in **Miller, et al, Exrs., v. Hammond, 156 Oh St 475,** overruled. **McDougall, Admr. v. Central National Bank of Cleveland, Trustee, 157 Oh St 45,** distinguished)."

It is to be noted in that syllabus that the decision of the Supreme Court in the case of Tax Commission, ex rel Price, Atty. Genl. v. Lamprecht, Admr., is approved and followed, and that part of the decision in the case of **Miller v. Hammond,** reported in **156 Oh St 475,** is overruled.

Therefore, whether the surviving spouse takes under the will or under the statute of descent and distribution, the federal estate tax is considered a debt against the entire estate and shall be deducted before a distribution.

The next question is to what property we shall look for money with which to pay the debts of the estate. We have a most unusual will in the fact that we have two residuary clauses; one residuary clause disposes of all the remainder of the personal property, and another residuary clause disposes of all the real estate not specifically devised and by which the widow is given a life estate in all the property not specifically devised and the remainder to four other persons in equal shares. Are the co-executors required to exhaust the personal property in the residue of the estate, or is the personal property and the real estate to share in proportion to the amounts which each bear to the total amount of the residuary estates? We have made an exhaustive research in answer to this question. In case there are specific devises and specific bequests and no residuary estate, courts of equity have equitably assessed a certain portion of the debts against personalty and a certain portion against realty. The statutes of Ohio are entirely silent as to the property which must be first exhausted in the payment of debts. One of the statutes provides that when the executor or administrator ascertains that the personal property is insufficient to pay the debts, then he shall proceed to sell the real estate. There is a strong implication in this case that the personal property shall first be exhausted before going to the real estate. Courts of Ohio have held that personal property shall first be exhausted and the practice has been so universal in Ohio that it is now considered to be the law that personal property, especially in intestate estates, shall first be exhausted before going to the real estate.

At section 197, under title Executors and Administrators, appearing in Vol. 21 of American Jurisprudence, we find the following language:

"At common law the real estate of a decedent vests immediately in his heirs and is not assets in the hands of the executor or administrator for the payment of debts, unless there is a will expressly charging it for that purpose, although in equity, in some instances, it is liable to be subjected to the payment of debts. In many jurisdictions, however, statutes expressly make the realty belonging to the estate of a decedent assets for the payment of debts and expenses of administration and authorize an administrator, after he has exhausted the personal estate, to apply to the court and obtain leave to sell so much of the real estate of which the intestate died seized as will be sufficient to discharge the residue of the debts."

The foregoing seems to be a clear statement of the law of Ohio. Referring to the Overturf case, appearing in **29 Oh St 230,** we find the Supreme Court has made a similar announcement and which decision has been followed consistently in subsequent reports.

At section 391, under title Executors and Administrators, appearing in 21 American Jurisprudence, page 604, we find the following language:

"It is well settled that the personal property of a decedent is primarily liable for his debts. The realty of a decedent is liable for his debts only after exhaustion of the personality for the purpose, even though the debts are secured by deed of trust or mortgage on the realty."

As heretofore stated, there are two residuary clauses in this will, one giving all the remainder of the personal property to the surviving spouse and another residuary clause giving her a life estate in the residue of the real estate, and the remainder to four different persons in equal shares.

At page 681 of A. L. R., we find the following language:

"In some cases, instead of the usual residuary clause, the testator has disposed of the residue in such a manner as to indicate an intention on his part to keep the realty and personalty separate, and to dispose of them as two funds, rather than to mingle them into a common mass from which debts and legacies should be paid. The question is always one of intention, to be determined from the particular provisions of the will, and no general rule can be laid down."

In reading the citations hereunder, we find that it was the intention of the court to ascertain the wishes or desires of the testator, and when the will was silent on that question, the general rule was applied. We have heretofore stated the general rule applying in Ohio and we are unable to find any language in the will which would indicate that the testator wished his executors to deviate from the general rule in Ohio.

While the Court was considering the foregoing application, Violet Roush and Edwin Roush, on December 22, 1954, filed an answer and cross petition, in which three questions are asked, and the court will now attempt to answer them in the order stated in the cross petition.

Question 1. What items of this will, if any, make provision for either specific legacies or devises as opposed to legacies and devises of a general nature? This question has been answered by the foregoing decision.

Question 2. In the event that the surviving widow of the decedent should elect to take against the will and under the statute of descent and distribution, what rights of exoneration arise in favor of the specific legatees or devisees, and if rights of exoneration are thereby created, what is the measure or amount of same? And if such rights of exoneration are created, to what funds or property comprised in the estate do they attach? In answer to this question the court has made an examination of a number of authorities, one of which is Pomeroy's Equity Jurisprudence, and in Vol. 2 thereof, Section 517, at page 462, we find the following language:

"If the person on whom the duty of electing rests elects to take in conformity with the will or other instrument of donation, he thereby relinquishes his own property, and must release or convey it to the donee upon whom the instrument had assumed to confer it. If he elects against the will or other instrument of donation, he thereby retains his own property, and must compensate the disappointed donee out of the estate given to himself by the donor. A court of equity will then sequester the benefits intended for the electing beneficiary, in order to secure compensation to those persons whom his election disappoints. This rule is applied in many of the American cases cited below to elections made by widows in favor of their dower and against the testamentary provisions, whereby the interests of other devisees were disturbed. Such dissappointed devisees are held entitled to compensa-

tion out of the benefits intended to be conferred by the will on the widow, but which she had rejected."

This principle has been followed by the Supreme Court of Ohio in the case of **Jennings v. Jennings**, reported in **21 Oh St 56**, the third syllabus of which reads as follows:

"Where, in such case, the widow elects to be endowed of the lands of her husband, the devisees who are prejudiced by such election, are equitably entitled to compensation out of the rejected provision made for her in the will."

The Supreme Court of Ohio has also followed the same principle in the case of **Dunlap v. McCloud, et al.**, reported in **84 Oh St 272**, the third syllabus of which reads as follows:

"While in such case the devisees who are prejudiced by the widow's election to be endowed of the lands of her husband, are equitably entitled to compensation out of the rejected provisions made for her in the will, yet where the rejected provisions do not fully compensate, the resulting uncompensated loss should fall upon the residuary estate in preference to the specific devises, unless a contrary intention appears from the will."

A much later case by the Supreme Court of Ohio supporting the same proposition is the case of **Kenyon College v. The Cleveland Trust Co., et al**, reported in **130 Oh St 107**, to which reference is hereby made.

The remaining portions of the second question this court feels are moot unless and until the surviving spouse makes her election as to whether she will or will not take under the will of her deceased husband. We therefore defer any further decision on that matter until her election is made.

The third question read as follows: In the event the surviving spouse elects to take against the will and under the statute of descent and distribution, is there an acceleration of the remainder interests which appear by the will to be dependent entirely upon the life tenancy of the said widow? The general rule applying to acceleration of remainders is that a remainder is accelerated by the failure or extinction of the life estate unless there is something in the will to indicate otherwise. This will indicates that it was the intention of the testator to provide his wife an income for life. There is no indication of any other purpose on the part of the testator in creating the life estate and remainders as he did. Therefore, when the widow renounces her life estate, the remainders are accelerated. That is the case in the will now under consideration.

An order may be drawn in harmony with the foregoing findings.